PER CURIAM.
Hilda Ruffin, one of the plaintiffs below, appeals from a summary judgment in favor of General Motors Acceptance Corporation (“GMAC”), the defendant below. We affirm in part, reverse in part, and remand.

Factual Background

Ruffin, who is African-American, began working for GMAC as a level-2 credit clerk in GMAC’s Gadsden office in 1985. In 1986, she was promoted to a level-3 credit clerk. In 1987, she was promoted to a level-4 customer-service representative. In 1994, she moved to GMAC’s Birmingham office. In 1996, she became a level-4 credit administrator in GMAC’s Birmingham office. In 1999, GMAC awarded two level-5 positions in its Birmingham office (“the 1999 level-5 promotions”) to two Caucasian employees, Christa Williamson and Kelly Hopkins.
In 2001, GMAC announced that it was closing its Birmingham office as part of a reorganization, and Ruffin was offered a position in GMAC’s Atlanta office, which she accepted. Ruffin was then “banded” as a level-5 employee in June 2001.[1] Also in 2001, Ruffin applied for a level-6 position in the Atlanta office, which would have constituted a promotion for her if it had been awarded to her (“the 2001 level-6 promotion”); however, that position was awarded to Donna Verling, a Caucasian employee, in August 2001.
On August 24, 2001, Ruffin filed with the Equal Employment Opportunity Commission (“the EEOC”) a charge claiming that GMAC had discriminated against her on the basis of her race.[2] The EEOC investigated her charge and issued a right-to-sue letter on September 18, 2002.

Procedural History

On December 16, 2002, Ruffin and five other African-American employees of GMAC (“the other five plaintiffs”) sued GMAC in the Lowndes Circuit Court.[3] *664 Ruffin claimed that GMAC had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[4] and 42 U.S.C. § 1981[5] by discriminating against her on the basis of her race with respect to job-performance evaluations, promotions, and pay. Ruffin alleged that GMAC had discriminated against her with respect to job-performance evaluations by rating her below the actual rating she deserved based on her job performance, which adversely affected her ability to receive promotions. She alleged that GMAC had discriminated against her with respect to promotions by awarding to less qualified Caucasian employees promotions for which Ruffin was qualified. She alleged that GMAC had discriminated against her with respect to pay by paying her less than Caucasian employees who were performing the same job at the same grade level.
In January 2003, GMAC removed the action to the United States District Court for the Middle District of Alabama. In February 2003, that court remanded the action to the Lowndes Circuit Court.
On March 5, 2003, GMAC moved to dismiss the action or, in the alternative, to transfer the action to a different venue. Specifically, GMAC asserted that venue was not proper in the Lowndes Circuit Court under § 6 — 3—7(a), Ala.Code 1975,[6] and, therefore, that the action should be dismissed pursuant to § 6-5-430, Ala.Code 1975,[7] or, in the alternative, should be *665 transferred to the Jefferson Circuit Court pursuant to § 6-3-21.1(a), Ala.Code 1975.[8] On October 20, 2008, the trial court denied GMAC’s March 5, 2003, motion to dismiss or, in the alternative, to transfer.
On August 20, 2004, GMAC again moved to dismiss the action or, in the alternative, to transfer it; however, the trial court denied that motion on December 29, 2004.
On January 27, 2005, GMAC petitioned the Alabama Supreme Court for a writ of mandamus directing the Lowndes Circuit Court to grant GMAC’s motion to dismiss the action or, in the alternative, to transfer it. The supreme court denied the petition without an opinion on July 8, 2005.
On February 20, 2007, GMAC moved the trial court for a summary judgment with respect to the claims of Ruffin and the other five plaintiffs. With respect to Ruffin’s claims, GMAC asserted that it was entitled to a summary judgment because, it said, (1) Ruffin’s § 1981 claims based on job-performance evaluations, promotions, and pay were time-barred by the two-year Alabama statute of limitations, which, GMAC said, applied to Ruffin’s § 1981 claims; (2) Ruffin’s Title VII claim based on the 1999 level-5 promotions was time-barred because, GMAC said, she had not filed her EEOC charge within 180 days after the 1999 level-5 promotions were awarded; (3) Ruffin’s Title VII and § 1981 claims based on the 2001 level-6 promotion had no merit because, GMAC said, she could neither prove that she was qualified for a level-6 promotion when the 2001 level-6 promotion was awarded to Verling nor prove that the legitimate, nondiscriminatory reason offered by GMAC for promoting Verling was a pretext; (4) Ruffin’s Title VII and § 1981 claims based on job-performance evaluations and pay had no merit because, GMAC said, she could not prove that similarly situated non-African-American employees received more favorable job-performance evaluations or higher pay; (5) Ruffin’s Title VII claim based on pay was time-barred insofar as it was based on pay she received more than 180 days before she filed her EEOC charge; (6) Ruffin’s Title VII claim based on pay was proeedurally barred insofar as it was based on pay she received after the EEOC issued the right-to-sue letter; and (7) Ruffin could not prevail on any of her claims because, GMAC said, she could not prove that GMAC purposefully and intentionally discriminated against her because she is an African-American. In support of its summary-judgment motion, GMAC submitted, among other things, an affidavit signed by Phillip Wilson (“the Wilson affidavit”), a retired employee of GMAC who had served as Human Resources Manager for GMAC’s Southeast *666 Region from 2001 through February 1, 2005, and an affidavit signed by Ashley Cink (“the Cink affidavit”), a GMAC employee who had served as Human Resources Manager for GMAC’s Eastern Region, which included GMAC’s Southeast Region, from May 2004 through July 2005.
On June 6, 2007, Ruffin and the other five plaintiffs filed their response in opposition to GMAC’s summary-judgment motion. On November 1, 2007, Ruffin and the other five plaintiffs moved the trial court to strike the Wilson affidavit and the Cink affidavit.
On December 27, 2007, GMAC filed responses to Ruffin and the other five plaintiffs’ motions to strike the Wilson affidavit and the Cink affidavit. On March 81, 2008, Ruffin and the other five plaintiffs filed replies to GMAC’s responses to Ruf-fin and the other five plaintiffs’ motions to strike the Wilson affidavit and the Cink affidavit. On May 6, 2008, Ruffin and the other five plaintiffs supplemented their motion to strike the Cink affidavit. On July 7, 2008, Ruffin and the other five plaintiffs supplemented their motion to strike the Cink affidavit a second time. On September 5, 2008, GMAC responded to the supplements to the motion to strike the Cink affidavit.
After taking the deposition of the expert witness proffered by Ruffin and the other five plaintiffs, GMAC, on May 6, 2009, supplemented its summary-judgment motion to address the testimony of that expert witness.
Following a hearing, the trial court, on September 21, 2009, entered an order (“the September 21 order”) granting GMAC’s summary-judgment motion with respect to Ruffin’s claims but denying it with respect to the claims of the other five plaintiffs. The trial court did not expressly rule on the motions to strike the Wilson affidavit and the Cink affidavit. Moreover, the trial court did not direct that the September 21 order be entered as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Subsequently, the other five plaintiffs stipulated to the dismissal of their claims with prejudice, and, on December 15, 2009, the trial court entered an order (“the December 15 order”) dismissing the claims of the other five plaintiffs with prejudice.
On January 8, 2010, Ruffin filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion challenging the propriety of the trial court’s summary judgment as to her claims. The trial court did not rule on Ruffin’s Rule 59(e) postjudgment motion within 90 days after it was filed; consequently, it was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., on April 8, 2010. On May 18, 2010, Ruffin filed a notice of appeal to the supreme court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.

Jurisdictional Challenge

As a threshold matter, GMAC asserts that this court lacks jurisdiction over Ruffin’s appeal because, GMAC says, Ruf-fin did not timely file her notice of appeal. GMAC first argues that Ruffin did not timely file her notice of appeal because, GMAC says, she did not file it within 42 days after the entry of the September 21 order granting GMAC’s summary-judgment motion with respect to Ruffin’s claims. However,
“[a]n appeal ordinarily lies only from the entry of a final judgment. Ala.Code 1975, § 12-22-2; Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990). A judgment is generally not final unless all claims, or the rights or liabilities of all parties, have been decided. Ex parte Harris, 506 So.2d 1003, 1004 (Ala.Civ.App.1987). The only exception to this *667 rule of finality is when the trial court directs the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Bean, 557 So.2d at 1253.”
Henning v. Henning, 999 So.2d 523, 525 (Ala.Civ.App.2008).
In the case now before us, the September 21 order did not adjudicate the claims of all the parties or the rights and liabilities of all the parties; it adjudicated only the claims of Ruffin. Moreover, the trial court did not direct that the September 21 order be entered as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Consequently, an appeal could not lie from the September 21 order, and Ruffin was not required to file her notice of appeal within 42 days after the entry of the September 21 order. See Henning.
Second, GMAC argues that Ruffin did not timely file her notice of appeal because, GMAC says, she did not file a Rule 59(e), Ala. R. Civ. P., motion “within 30 days in order to toll the time for her to appeal the Circuit Court’s summary judgment ruling, as required by Ala. R. Civ. P. 59(e).” GMAC’s brief at p. 20. Given that Ruffin filed her Rule 59(e) motion on January 8, 2010, which was within 30 days after the entry of the December 15 order, GMAC appears to be arguing that Ruffin did not timely file her Rule 59(e) motion because she did not file it within 30 days after the entry of the September 21 order. However, the supreme court has held that a Rule 59(e) motion may be made only in reference to a final, appealable judgment:
“By its express terms, Rule 59(e) applies only where there is a ‘judgment.’ That term is specifically defined in Ala. R. Civ. P. 54(a), as ‘a decree and any order from which an appeal lies.’ (Emphasis added.) Rule 59 does not apply to interlocutory orders, because such orders remain “within the breast of the court.’ Rheams v. Rheams, 378 So.2d 1125, 1128 (Ala.Civ.App.1979). A ‘Rule 59 motion may be made only in reference to a final judgment or order.’ Malone v. Gainey, 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999); see also Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir.1988); Momar, Inc. v. Schneider, 823 So.2d 701, 704 (Ala.Civ.App.2001) (a Rule 59(e) ‘motion may be taken only from a final judgment’).”
Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549-50 (Ala.2003).
Thus, because an appeal could not lie from the September 21 order, see Hen-ning, Rule 59(e) did not require that Ruf-fin file her Rule 59(e) motion within 30 days after the entry of the September 21 order; it required that Ruffin file her Rule 59(e) motion within 30 days after the entry of the December 15 order, which was the final, appealable judgment entered by the trial court. Ruffin did timely file her Rule 59(e) motion within 30 days after the entry of the December 15 order. In pertinent part, Rule 4(a)(3), Ala. R.App. P., provides:
“The filing of a post-judgment motion pursuant to Rules 50, 52, 55 or 59 of the Alabama Rules of Civil Procedure (ARCP) shall suspend the running of the time for filing a notice of appeal. In cases where post-judgment motions are filed, the full time fixed for filing a notice of appeal shall be computed from the date of the entry in the civil docket of an order granting or denying such motion. If such post-judgment motion is deemed denied under the provisions of Rule 59.1 of the Alabama Rules of Civil Procedure, then the time for filing a notice of appeal shall be computed from the date of denial of such motion by operation of law, as provided for in Rule 59.1.”
Ruffin’s timely filing of her Rule 59(e) motion suspended the running of the time *668 for filing her notice of appeal until her motion was denied by operation of law pursuant to Rule 59.1 on April 8, 2010. She timely filed her notice of appeal on May 18, 2010. Accordingly, we find no merit in GMAC’s argument that this court lacks jurisdiction over Ruffin’s appeal.

Venue Challenge

GMAC also asserts that this court should dismiss Ruffin’s appeal because, GMAC says, the Lowndes Circuit Court became an improper venue for Ruffin’s claims upon the entry of the trial court’s December 15 order because, GMAC says, the December 15 order dismissed with prejudice the claims of the only plaintiff who was a resident of Lowndes County. However, this argument has no merit because, “[a]s [the supreme court] has frequently held, proper venue for an action is determined at the commencement of the action.” Ex parte Overstreet, 748 So.2d 194,196 (Ala.1999).

Standard of Review

“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Analysis

A. Whether Ruffin’s § 1981 claims based on job-performance evaluations, promotions, and pay are time-barred.

GMAC argued that it was entitled to a summary judgment with respect to all Ruffin’s § 1981 claims because, it said, those claims were barred by Alabama’s two-year statute of limitations. Ruffin argued that GMAC was not entitled to a summary judgment on that ground because, she said, a four-year statute of limitations applied to those claims.
Section 1981 does not contain an express statute of limitations.
“Prior to 1990, in determining the proper statute of limitations, federal courts were to apply the most analogous state statute of limitations to § 1981 claims, which, in this case, was two years under Alabama law. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660-61, 107 S.Ct. 2617, 2620-21, 96 L.Ed.2d 572 (1987), superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); see also Moore v. Liberty Nat. Life Ins. Co., 267 F.3d 1209, 1219 (11th Cir.2001) (applying Alabama’s two-year statute of limitations for personal-injury torts to § 1981 claim). In 1990, Congress enacted *669 § 1658(a), which created a default four-year limitations period for federal causes of action created after that date. See 28 U.S.C. § 1658. One year later, as part of the Civil Rights Act of 1991, Congress amended § 1981 to include a cause of action for discrimination in the terms and conditions of employment as well as discrimination in the making and enforcement of contracts. See 42 U.S.C. § 1981.
“The Supreme Court subsequently determined in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 1845, 158 L.Ed.2d 645 (2004), that Congress’s 1990 enactment of § 1658 changed the limitations period to four years for some claims under § 1981. See id. at 377-80, 124 S.Ct. at 1842-44. The Supreme Court also explained that, to the extent that the Civil Rights Act of 1991 created new causes of action not previously cognizable under § 1981, such claims are subject to the four-year ‘catch-all’ statute of limitations of § 1658. See id. at 380-83, 124 S.Ct. at 1844-45.”
Price v. M & H Valve Co., (No. 05-15205, April 7, 2006) (11th Cir.2006) (not selected for publication in the Federal Reporter)
In her brief to this court, Ruffin argues that the four-year statute of limitations of 28 U.S.C. § 1658 applies to her § 1981 claim based on the 1999 level-5 promotions. Under Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), which applied to § 1981 claims before the amendments contained in the Civil Rights Act of 1991, a failure-to-promote claim was actionable under § 1981 if the promotion rose “to the level of an opportunity for a new and distinct relation between the employee and the employer.” Id. at 185.
“In Patterson, the Court sought to distinguish between routine increases in salary or responsibility which are clearly part of an original contract of employment and promotions which signal a new contractual relationship between employee and employer. In determining whether a particular promotion rises to the level of a new and distinct relation between employer and employee, the court must compare the nature of the employee’s current duties, compensation, and benefits [with the] duties, compensation, [and] benefits in the different position in question. As an example of one change in employment position which constitutes a new and distinct relation, the Court cites Hishon v. King and [Spalding], 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The plaintiff in Hishon was an associate in a law firm who alleged that she was denied partnership status because she is a woman. The Court’s example is instructive. The difference between [the] rights, duties, and compensation of associates and partners in a law firm are significant. While both the associate and the partner are attorneys, the role of the partner is supervisory and carries increased responsibility. It may also involve personal liability for the affairs of the firm. The method of compensation and amount of benefits attendant to an associate position differ from those of a partner. In applying Patterson, the Fourth Circuit has ruled that a promotion from billing clerk to supervisor is the type of promotion which also engenders a new and distinct relation between employee and employer covered by § 1981. Mallory v. Booth Refrigeration Supply Co., Inc., 882 F.2d 908, 911 (4th Cir.1989).”
Harrison v. Associates Corp. of North America, 917 F.2d 195, 198 (5th Cir.1990).
If Ruffin had been awarded either of the 1999 level-5 promotions, she would have *670 been promoted from a level-4 administrative position to a level-5 administrative position. Such a promotion would not have involved a promotion from an administrative, nonsupervisory position to a supervisory position; to the contrary, such a promotion would have merely been a promotion from one administrative, nonsuper-visory position to another administrative, nonsupervisory position that was one level higher. Moreover, there is no evidence in the record indicating that the increases in salary and responsibility that would have been occasioned by such a promotion would have risen to the level of signaling a new relationship between Ruffin and GMAC if she had received the promotion. Accordingly, we conclude that the four-year “catch-all” statute of limitations under § 1658 was applicable to Ruffin’s § 1981 claim based on the 1999 level-5 promotions and, therefore, that claim was not time-barred.
Because Ruffin filed her action within four months after GMAC awarded the 2001 level-6 promotion to Verling, Ruffin’s § 1981 claim based on that promotion is not time-barred regardless of whether the Alabama two-year statute of limitations or the § 1658 four-year statute of limitations applies to that claim.
In her principal brief to this court, Ruffin has not specifically argued that her § 1981 claims based on job-performance evaluations and pay are timely. In Scrushy v. Tucker, 70 So.3d 289, 306-07 (Ala.2011), the supreme court stated:
“ ‘In order to secure a reversal, “the appellant has an affirmative duty of showing error upon the record.” Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983). It is a familiar principle of law:
“ ‘ “When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court’s order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant’s principal brief constitutes a waiver with respect to the issue.”
“ ‘Fogarty v. Southworth, 953 So.2d 1225, 1232 (Ala.2006) (footnote omitted) (emphasis added). This waiver, namely, the failure of the appellant to discuss in the opening brief an issue on which the trial court might have relied as a basis for its judgment, results in an affirmance of that judgment. Id. That is so, because “this court will not presume such error on the part of the trial court.” Roberson v. C.P. Allen Constr. Co., 50 So.3d 471, 478 (Ala.Civ.App.2010) (emphasis added). See also Young v. Southern Life & Health Ins. Co., 495 So.2d 601 (Ala.1986)....’
“Soutullo v. Mobile County, 58 So.3d 733, 738-39 (Ala.2010).”
Accordingly, because GMAC asserted before the trial court that Ruffin’s § 1981 claims based on job-performance evaluations and pay were time-barred, because the trial court did not specify the basis for its granting GMAC’s summary-judgment motion with respect to those claims, and because Ruffin has not specifically argued in her principal brief to this court that those claims are not time-barred, we affirm the summary judgment in favor of GMAC with respect to those claims. See Scrushy.

B. Whether Ruffin’s Title VII claims based on the 1999 level-5 promotions and pay she received more than 180 days before she filed her charge with the EEOC are time-barred.

“A plaintiff may not sue under Title VII unless she first exhausts administra- *671 five remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission (‘EEOC’). See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir.2001). In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act. See Ledbetter v. Goodyear Tire and Rubber Co., 421 F.3d 1169, 1178 (11th Cir.2005) (explaining that Alabama is a non-deferral state, such that only unlawful practices occurring within 180 days of the operative EEOC charge can give rise to Title VII liability).”
Carter v. University of South Alabama Children’s & Women’s Hosp., 510 F.Supp.2d 596, 606 (S.D.Ala.2007).
GMAC argued that it was entitled to a summary judgment with respect to Ruffin’s Title VII claim based on the 1999 level-5 promotions because, GMAC said, Ruffin did not file her charge with the EEOC within 180 days after those promotions occurred. Although the trial court did not state its rationale for granting GMAC’s summary-judgment motion, Ruffin, in her principal brief to this court, has not argued that her Title VII claim based on the 1999 level-5 promotions was not time-barred despite her failure to file her charge with the EEOC within 180 days after those promotions. Accordingly, she has waived that issue, and we affirm the summary judgment in favor of GMAC with respect to Ruffin’s Title VII claim based on the 1999 level-5 promotions. See Scrushy.
GMAC also argued that it was entitled to a summary judgment with respect to Ruffin’s Title VII pay claim insofar as it was based on pay she received more than 180 days before she filed her charge with the EEOC on August 24, 2001, because, GMAC said, it was time-barred. Ruffin argues that the trial court erred insofar as it may have granted the summary-judgment motion on the basis of that argument because, Ruffin says, her Title VII pay claim was timely insofar as it was based on pay she received more than 180 days before she filed her charge with the EEOC by virtue of the Lilly Ledbetter Fair Pay Act of 2009 (“the FPA”), Pub.L. No. 111-2, 123 Stat. 5.
In Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), the United States Supreme Court held that Lilly Ledbetter’s Title VII claim based on pay was time-barred because she did not file an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her and that her employer’s issuance of paychecks that reflected those allegedly discriminatory pay decisions during the 180 days before she filed her EEOC charge did not alter that result:
“The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse' effects resulting from the past discrimination....
“... Ledbetter should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her. She did not do so, and the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming that prior failure.”
Ledbetter, 550 U.S. at 628-29.
Congress responded to Ledbetter by passing the FPA.[9] Among other things, *672 the FPA amended § 706(e) of the Civil Rights Act of 1964, which is codified as 42 U.S.C. § 2000e-5(e), to add the following:
“(S)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation ..., when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
“(B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.”
Pub.L. No. 111-2, § 3, 123 Stat. 5 (emphasis added).
Thus, the FPA has superseded the Supreme Court’s holding in Ledbetter and provides that the issuance of a paycheck reflecting a discriminatory pay decision or practice is itself an unlawful employment practice under Title VII. Moreover, the FPA provides that if the issuance of paychecks reflecting the discriminatory pay decision during the 180 days before the plaintiff filed his or her EEOC charge was “similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge,” the plaintiff can recover “back pay for up to two years preceding the filing of the charge.” Pub.L. No. 111-2, § 3, 123 Stat. 5. Furthermore, the FPA provides that it “take[s] effect as if enacted on May 28, 2007 and applies] to all claims of discrimination in compensation under Title VII ... that are pending on or after that date.” Pub.L. No. 111-2, § 6, 123 Stat. 5. Thus, because Ruffin’s Title VII claim based on pay was pending on May 28, 2007, the FPA applies to her claim. Id.
Accordingly, the FPA provides that Ruffin’s Title VII claim based on pay is not time-barred with respect to pay she received up to two years before she filed her EEOC charge if she can prove (1) that GMAC issued her a paycheck during the 180 days before she filed her EEOC charge that reflected a discriminatory pay decision and (2) that the issuance of that paycheck was “similar or related to unlawful employment practices with regard to discrimination in compensation that oc *673 curred outside the time for filing a charge.” Pub.L. No. 111-2, § 3, 123 Stat. 5. GMAC did not submit evidence establishing that Ruffin could not prove that she was entitled to recover back pay for up to two years before she filed her EEOC charge. Therefore, we cannot affirm the summary judgment with respect to Ruf-fin’s Title VII pay claim insofar as it is based on pay Ruffin received up to two years before she filed her EEOC charge on the ground that it is time-barred. Moreover, GMAC did not assert that it was entitled to a summary judgment with respect to that portion of Ruffin’s Title VII pay claim on the ground that she could not prove her prima facie case and, therefore, GMAC never shifted to Ruffin the burden to prove her prima facie case with respect to that portion of her Title VII pay claim. Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 78 (Ala.2003). In Kennedy, the supreme court stated:
“ ‘ “[A] party seeking a summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion.” ’ Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When a motion for a summary judgment is based on a failure of the nonmovant’s evidence, the moving party must indicate where the nonmovant’s case suffers an evidentiary failure. Id.”
857 So.2d at 78. Consequently, we reverse the summary judgment with respect to Ruffin’s Title VII pay claim insofar as it is based on paychecks issued to her within two years of her filing her EEOC charge. However, we affirm the summary judgment with respect to Ruffin’s Title VII pay claim insofar as it is based on paychecks issued to her more than two years before she filed her EEOC charge because that portion of her Title VII pay claim is not timely under the FPA.

C. Whether Ruffin’s Title VII pay claim is procedurally barred insofar as it is based on pay she received after the EEOC issued the right-to-sue letter.

GMAC also argued that it was entitled to a summary judgment with respect to Ruffin’s Title VII pay claim insofar as it was based on pay she received after the EEOC issued its right-to-sue letter because, GMAC said, that portion of her Title VII pay claim was procedurally barred because, GMAC said, Ruffin could not prove that it was reasonably related to the charge she filed with the EEOC. Ruf-fin argues that the trial court erred insofar as it granted GMAC’s summary-judgment motion with respect to the portion of Ruf-fin’s Title VII pay claim that was based on pay she received after the EEOC issued the right-to-sue letter because, she says, that portion of her claim is “ ‘like or related to’ the original charge before the EEOC.” Ruffin’s principal brief at p. 58 (quoting Gamble v. Birmingham S. R.R. Co., 514 F.2d 678, 689 (5th Cir.1975)). However, the record on appeal does not contain a copy of her original charge before the EEOC.
“An appellate court does not presume error; the appellant has the affirmative duty of showing error. Appellate review is limited to the record and cannot be altered by statements in briefs. Error asserted on appeal must be affirmatively demonstrated by the record. If the record does not disclose the facts upon which the asserted error is based, the error will not be considered on appeal.”
Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ.App.1993) (citations omitted). Accordingly, because Ruffin’s original charge before the EEOC is not in the record, we cannot consider Ruffin’s argument that the portion of her Title VII pay claim based on *674 pay she received after the EEOC issued its right-to-sue letter is “like or related to” her original EEOC charge. Thus, we affirm the trial court’s judgment as to this portion of Ruffin’s Title VII pay claim.

D. Whether Ruffin established a prima facie case with respect to her § 1981 claim based on the 1999 levels promotions.

Title VII and § 1981 “have the same requirements of proof and use the same analytical framework....” Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998).
“When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual. Id., at 802-04, 93 S.Ct. at 1824-25.”
Standard, 161 F.3d at 1331.
In order to establish a prima facie case of discriminatory failure to promote,
“the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).”
Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir.2005).
In this case, GMAC did not assert as a ground of its summary-judgment motion that Ruffin could not prove an essential element of her prima facie case with respect to her § 1981 claim based on the 1999 level-5 promotions. Therefore, GMAC never shifted to Ruffin the burden of producing substantial evidence of any of the elements of that prima facie case. See Kennedy, supra. Therefore, we reverse the summary judgment with respect to Ruffin’s § 1981 claim based on the 1999 level-5 promotions.

E. Whether Ruffin established a prima facie case with respect to her § 1981 and Title VII claims based on the 2001 leveK6 promotion and, if so, whether GMAC met its burden of offering a legitimate, nondiscriminatory reason for awarding that promotion to Verling.

GMAC argued that it was entitled to a summary judgment with respect to Ruffin’s § 1981 and Title VII claims based on the 2001 level-6 promotion on the grounds that Ruffin could neither prove that she was qualified for a level-6 promotion when the 2001 level-6 promotion was awarded to Verling nor prove that the legitimate, nondiscriminatory reason offered by GMAC for promoting Verling was a pretext. Ruffin argues that the trial court erred in granting GMAC’s summary-judgment motion with respect to her Title VII and § 1981 claims based on the 2001 level-6 promotion because, she says, she did make a prima facie showing that she was qualified for that promotion when it was awarded to Verling and GMAC failed to meet its burden of offering a legitimate, nondiscriminatory reason for awarding that promotion to Verling.
*675 GMAC argued that Ruffin did not make a prima facie showing that she was qualified for the 2001 level-6 promotion because, GMAC said, (1) Ruffin was a level-4 employee when that level-6 position was awarded to Verling and (2) Ruffin admitted in her deposition that a GMAC employee would have to be at least a level-5 employee in order to qualify for a promotion to a level-6 position.
However, the Wilson affidavit submitted by GMAC states that, “[i]n June 2001, Plaintiff Ruffin was re-banded from a level-four to a level-five employee.” It is undisputed that the 2001 level-6 promotion was awarded to Verling in August 2001. In reviewing a summary judgment, “we must view all the evidence in a light most favorable to the nonmovant and we must entertain all reasonable inferences from the evidence in favor of the nonmovant,” First Fin. Ins. Co. v. Tillery, 626 So.2d 1252, 1254 (Ala.1993), which, in this case, is Ruffin. Accordingly, based on the Wilson affidavit, we conclude that a genuine issue of material fact exists regarding whether Ruffin was re-banded as a level-5 employee before the 2001 level-6 promotion was awarded to Verling and, therefore, that a genuine issue of material fact exists regarding whether Ruffin made a prima fa-cie showing that she was qualified for that promotion. Therefore, the trial court could not have properly granted GMAC’s summary-judgment motion on the basis of GMAC’s argument that Ruffin was not qualified for the 2001 level-6 promotion because she was still a level-4 employee when that promotion was awarded to Ver-ling. See Standard, 161 F.3d at 1331.
Thus, we must determine whether a genuine issue of material fact exists regarding whether GMAC had a legitimate, nondiscriminatory reason for awarding the 2001 level-6 promotion to Verling. Id. GMAC designated Wilson as its Rule 30(b)(6), Ala. R. Civ. P., representative to give deposition testimony regarding, among other things, GMAC’s “employment decisions relevant to this lawsuit....” During the 30(b)(6) deposition, Wilson gave the following testimony regarding GMAC’s awarding the 2001 level-6 promotion to Verling instead of Ruffin:
“Q. Does the company have a reason for denying Hilda Ruffin the Level 6 supervisor position in Atlanta?
“A. I don’t know.
“Q. Does the company have a reason for denying Hilda Ruffin the Level 6 supervisory position that was given to Donna Verling?
“A. I don’t know.”
In the Wilson affidavit, Wilson attested:
“In June 2001, Plaintiff Ruffin was re-banded from a level-four to a level-five employee. Donna Verling, by contrast, had been a level-six employee since 1994. Additionally, as a level-six employee, Donna Verling had rated ‘superi- or’ on performance evaluations since at least 1996. In August 2001, Donna Ver-ling moved from a level-six position in Orlando, Florida to a level-six position in the Atlanta administration center. A copy of Plaintiff Ruffin’s employment history and Donna Verling’s employment history is Exhibit K hereto.
[[Image here]]
“In choosing among candidates to fill available positions, GMAC chose the most qualified candidates. Although the ‘qualification’ criteria varied by position, GMAC consistently chose the most qualified candidates. Race was not a factor in promotion decisions or any other employment decisions.”
The Wilson affidavit offered no explanation for the change in Wilson’s testimony since his deposition, and Ruffin argues that the trial court erred in failing *676 to grant her motion to strike the Wilson affidavit based on the absence of such an explanation. However, we need not reach that issue because, even- if the trial court did not err in failing to strike the portions of the Wilson affidavit that constitute unexplained changes in Wilson’s deposition testimony, those unexplained changes create a jury question with respect to his credibility. “ ‘It goes without saying that “ ‘ “a court may not determine the credibility of witnesses on a motion for summary judgment.” ’ ” ’ Dixon v. Board of Water & Sewer Comm’rs of the City of Mobile, 865 So.2d 1161, 1166 n. 2 (Ala.2008).” Davis v. Sterne, Agee & Leach, Inc., 965 So.2d 1076, 1089 (Ala.2007). Thus, a jury question exists regarding whether GMAC had a legitimate, nondiscriminatory reason for awarding the 2001 level-6 promotion to Verling instead of Ruffin.
Because jury questions exist with respect to both the issue whether Ruffin was qualified for the 2001 level-6 promotion and the issue whether GMAC had a legitimate, nondiscriminatory reason for awarding that promotion to Verling, we reverse the summary judgment with respect to Ruffin’s Title VII and § 1981 claims based on the 2001 level-6 promotion awarded to Verling.

F. Whether Ruffin established a prima facie case with respect to her Title VII pay claim based on pay she received between the 180th day before she filed her charge with the EEOC and the date the EEOC issued the right-to-sue letter and, if so, whether GMAC offered evidence of a legitimate, nondiscriminatory reason for paying Ruffin less than similarly situated non-African-American employees.

GMAC argued that it was entitled to a summary judgment with respect to Ruffin’s Title VII pay claim insofar as it was based on pay she received between the 180th day before she filed her charge with the EEOC and the date the EEOC issued the right-to-sue letter because, GMAC said, Ruffin could not prove that similarly situated non-African-American employees received higher pay than she did and she could not prove that GMAC purposefully and intentionally discriminated against her with respect to pay because she is an African-American. Ruffin argues that the trial court erred insofar as it granted GMAC’s summary-judgment motion with respect to that portion of her Title VII pay claim because, she says, she produced evidence establishing a prima fa-cie case of discrimination with respect to that portion of her Title VII pay claim by introducing evidence indicating that six similarly situated non-African-American employees, Jan Wood, Lisa Daniel, Sandy Dorrill, Phyllis Waldrep, Pamela Lord, and Joy Ryan, were paid more than Ruffin and GMAC failed to offer any evidence of a legitimate, nondiscriminatory reason for paying those six non-African-American employees more than it paid her.
A plaintiff establishes a prima fa-cie case of a Title VII violation based on a disparity in wages by showing that she occupies a job similar to that of higher paid employees who are outside the protected class. See Passmore v. Kindercare Learning Centers, 979 F.Supp. 1413, 1422 (M.D.Ala.1997). Ruffin offered evidence indicating that, during the period beginning on the 180th day before she filed her charge with the EEOC and ending in June 2001 when she was rebanded a level-5 employee, there were six non-African-American level-4 employees, Wood, Daniel, Dorrill, Waldrep, Lord, and Ryan, who performed jobs that were similar to Ruf-fin’s job and received higher pay than Ruf-fin. Accordingly, we conclude that Ruffin established a prima facie case of discrimination with respect to pay during the period beginning on the 180th day before she *677 filed her EEOC charge and ending with her rebanding as a level-5 employee in June 2001. See Passmore.
Thus, the burden shifted to GMAC to produce evidence indicating that it had a legitimate, nondiscriminatory reason for paying the six non-African-American employees cited by Ruffin more than it paid Ruffin. Standard, 161 F.3d at 1331. As GMAC’s Rule 30(b)(6) representative, Wilson testified in his deposition as follows:
“Q. ... During the period between 1999 and 2001, do you know whether Jan Wood made more money than Hilda Ruffin?
“A. Don’t know.
“Q. Assuming that she did, does the company have a reason why Jan Wood made more money than Hilda Ruffin?
“A. Don’t know.
“Q. Do you know Lisa Daniel? Have you ever heard of that name?
“A. Yes.
“Q. Do you know whether she made more money than Hilda Ruffin?
“A. Don’t know.
“Q. Assuming that she did, does the company have a reason for why Lisa Daniel made more money than Hilda Ruffin during that period from '99 to 2001?
“A. Don’t know.
“Q. Do you know Sandy Dorrill?
“A. I’ve seen that name.
“Q. D-o-r-r-i-1-1.
“A. I’ve seen the name.
“Q. Do you know how much money Sandy Dorrill made during that period from '99 to 2001?
“A. No, I don’t.
“Q. Assuming that she made more money than Hilda Ruffin, does the company have a reason why Sandy Dorrill made more money than Hilda Ruffin during that period of time?
“A. No, I don’t.
“Q. Phyllis Waldr[e]p, do you know Phyllis Waldr[e]p?
“A. I’ve also seen that name.
“Q. Do you know how much money she made in comparison to Hilda Ruffin during that period of time, '99 to 2001?
“A. No, I don’t.
“Q. Assuming that she made more than Hilda Ruffin, does the company have a reason why Hilda Ruffin was paid less than Phyllis Waldr[e]p during that period of time?
“A. No, I don’t.
“Q. Do you know Joy Ryan?
“A. I’m not familiar with that name.
“Q. Do you know how much she made during that period from '99 through 2001?
“A. No.
“Q. Assuming that she made each year more than Hilda Ruffin, does the company have a reason why Joy Ryan made more money than Hilda Ruffin during that period of time?
“A. No.”[10]
However, in the Wilson affidavit, Wilson attested:
“Pursuant to its ‘pay for performance’ philosophy, GMAC made decisions regarding pay in accordance with employees’ performance. Under GMAC’s rating system, employee performance is rated on the following descending scale: outstanding, superior, highly effective, good competent, needs slight improvement and needs much improvement.”
*678 The Wilson affidavit offered no explanation for the change in Wilson’s testimony since his deposition. Ruffin argues that the trial court erred in failing to strike the Wilson affidavit based on the absence of such an explanation. However, we need not reach that issue because, even if the trial court did not err in failing to strike the portions of the Wilson affidavit that constitute unexplained changes in his deposition testimony, those unexplained changes create a jury question with respect to his credibility. Thus, a jury question exists regarding whether GMAC had a legitimate, nondiscriminatory reason for paying Wood, Daniel, Dorrill, Waldrep, and Ryan more than it paid Ruffin. See Davis. Therefore, we reverse the summary judgment in favor of GMAC with respect to Ruffin’s Title VII pay claim based on pay she received beginning on the 180th day before she filed her charge with the EEOC and ending when she was rebanded as a level-5 employee in June 2001.

G. Whether Ruffin established a prima facie case with respect to her Title VII claim based on job-performance evaluations.

GMAC asserted that it was entitled to a summary judgment with respect to Ruffin’s Title VII claim based on job-performance evaluations because, GMAC said, she could not prove that similarly situated non-African-American employees received more favorable job-performance evaluations than she did and she could not prove that GMAC purposefully and intentionally discriminated against her with respect to job-performance evaluations because she is an African-American.[11]
An employee can establish a pri-ma facie case of discrimination based on job-performance evaluations by showing that “(1) [she] belongs to a protected class; (2) [she] was qualified to do the job; (3) [she] was subjected to adverse employment action; and (4) [her] employer treated similarly situated employees outside [her] class more favorably.” Braswell v. Allen, 586 F.Supp.2d 1297, 1305 (M.D.Ala.2008). The United States Court of Appeals for the Eleventh Circuit has held “that an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII,” Gillis v. Georgia Dep’t of Corr., 400 F.3d 883, 888 (11th Cir.2005), for purposes of establishing a prima facie case.
Ruffin testified that, in 1997, she received a job-performance evaluation of “highly effective” instead of “superior”; that she disagreed with that evaluation; and that she considered it discriminatory. However, Ruffin testified that she was satisfied with her job-performance evaluations in 1998, 1999, 2000, and 2001. Ruffin did not produce any evidence establishing that her 1997 evaluation directly disen-titled her to a raise of any significance or a promotion. Accordingly, we conclude that Ruffin failed to establish that her 1997 evaluation was an adverse employment action under Title VII and, therefore, failed to establish a prima facie case of discrimination with respect to job evaluations under Title VII. Consequently, we affirm the summary judgment with respect to her Title VII claim based on job-performance evaluations.

H. Whether the trial court erred in granting GMAC’s summary-judgment motion with respect to Ruffin’s claims while denying the motion with respect to the claims of the other five plaintiffs.

Finally, Ruffin argues that the trial court erred in granting GMAC’s sum *679 mary-judgment motion with respect to her claims because, she says, the trial court denied the summary-judgment motion with respect to identical claims asserted by some of the other five plaintiffs. However, Ruffin has not cited any legal authority in support of that argument.
“Rule 28(a)(10), Ala. R.App. P., provides that the appellant’s brief shall contain ‘[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.’ It is well settled that ‘ “[wjhere an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court’s duty nor its function to perform all the legal research for an appellant.” ’ Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala.1993) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990)).”
Mantiply v. Mantiply, 951 So.2d 638, 653 (Ala.2006). Therefore, we decline to consider Ruffin’s argument regarding the denial of the summary-judgment motion with respect to the claims of the other five plaintiffs.

Conclusion

In summary, we reverse the summary judgment in favor of GMAC with respect to Ruffin’s § 1981 claim based on the 1999 level-5 promotions, her Title VII and § 1981 claims based on the 2001 level-6 promotion, and her Title VII pay claim based on paychecks issued to her up to two years before she filed her EEOC charge and paychecks issued to her during the period beginning with the 180th day before she filed her EEOC charge and ending when she was rebanded to a level-5 employee in June 2001, and we remand the cause for further proceedings consistent with this opinion. In all other respects, we affirm the summary judgment in favor of GMAC.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.

.When asked in her deposition what "banding” means, Ruffin testified that "[t]hat means that everyone in Atlanta already were Level 5s, and they had to bring the Birmingham employees up to what other employees were already considered.”

. The record does not contain a copy of Ruf-fin's EEOC charge.

. Because the other five plaintiffs are not parties to this appeal, we do not discuss the specifics of their claims.

. 42 U.S.C. § 2000e-2(a)(l) provides:
"It shall be an unlawful employment practice for an employer—
"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.”

. 42 U.S.C. § 1981(a) provides:
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every land, and to no other.” Section 42 U.S.C.1981(b) provides:
"For purposes of this section, the term 'make and enforce contracts’ includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.”

. Section 6-3-7(a) provides:
"(a) All civil actions against corporations may be brought in any of the following counties:
"(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
“(2) In the county of the corporation's principal office in this state; or
"(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff’s residence; or
"(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action.”

.Section 6-5-430 provides:
"Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an *665 action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal.”

. In pertinent part, § 6-3-21.1 provides:
“(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.”

. In pertinent part, Section 2 of the FPA provides:
"(I) The Supreme Court in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), significantly impairs statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades. The Ledbetter decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress.
"(2) The limitation imposed by the Court on the filing of discriminatory compensation claims ignores the reality of wage discrimination and is at odds with the robust application of the civil rights laws that Congress intended.”
Pub.L. No. 111-2, § 2, 123 Stat. 5.

. Wilson was not questioned regarding Pamela Lord.

. GMAC did not assert that Ruffin's Title VII claim based on job-performance evaluations was time-barred or procedural!/ barred.